**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

DEBBIE BROWN,            )
                              )
Plaintiff,          )
                              )
vs.                  )    NO. 1:08-CV-184
                              )
MICHAEL J. ASTRUE,    )
COMMISSIONER OF SOCIAL   )
SECURITY,            )
                              )
Defendants.        )

## OPINION AND ORDER

This matter is before the Court for review of the Commissioner of Social Security's decision denying Disability Insurance Benefits and Supplemental Security Income to Plaintiff, Debbie Brown. For the reasons set forth below, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

BACKGROUND

On November 10, 2004, Plaintiff, Debbie Brown ("Brown"), applied for Social Security Disability Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. section 401 et seq. Brown claims that her disability began as of July 4, 2004, the date she

suffered a knee injury that forced her to stop working. The Social Security Administration denied her initial application on July 17, 2005, and again upon reconsideration on August 10, 2005. On July 13, 2007, Brown appeared at an administrative hearing before Administrate Law Judge ("ALJ") Frederick McGrath. Testimony was provided by Plaintiff and Robert Bond (a vocational expert). On November 27, 2007, ALJ Frederick McGrath denied Brown's DIB claim, finding that, during the period from July 4, 2004 (Brown's alleged onset date) to November 27, 2007 (the date of the ALJ's decision), Brown had not been "disabled" as defined in the Social Security Act.

Plaintiff requested the Appeals Council review the ALJ's decision. This request was denied. Accordingly, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). Brown has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. section 405(g). This Court now properly reviews the Commissioner's final decision.


DISCUSSION

Facts

Brown was born on May 27, 1956. (Tr. 554). At the time of her examination by ALJ McGrath, Brown was 51 years of age, 5'4'' tall, and weighed 237 pounds. (Tr. 554). She is a high school graduate but has not attended college or received any kind of vocational

training. (Tr. 555). Her past relevant work is that of a convenience store clerk. (Tr. 556). In her disability report and during her hearing, Brown alleged that she suffers from degenerative disk and joint disease, osteoarthritis, psoriatic arthritis, fibromyalgia, psoriasis, hypertension, allergies, asthma, diabetes, carpel tunnel syndrome, chronic back, spine, and neck pain and stiffness, cervical dystonia, high blood pressure, and irritable bowel syndrome. (Tr. 115-116, 553). Brown alleges that she has been disabled since July of 2004, when she suffered a knee injury. (Tr. 556, 558).

The medical evidence of record establishes the following:

Brown was treated periodically at the Allergy and Asthma Center through May of 2004. (Tr. 324-63). In December of 2003, Brown visited the Center with complaints of sinus infections and a nocturnal cough that she had been suffering for about two years. (Tr. 324, 329). An examination revealed that Brown's throat, chest, heart, and skin were normal. (Tr. 327). Brown returned in January of 2004, again suffering from congestion and an occasional cough. (Tr. 337). The examination revealed that Brown's condition had improved. (Tr. 339). In February, Brown again returned, this time with no cough or congestion but reporting that she had an asthma flare up for two days. (Tr. 342). The examining physician diagnosed Brown with mild sinus congestion but noted that she appeared normal. (Tr. 343). In March, Brown returned for a follow-up examination and

reported that she was doing better; her cough was gone and she only suffered mild symptoms while working with chemicals at work. (Tr. 349). The doctor did not notice any significant changes and he decreased her medication. (Tr. 350). Brown returned to the Center in May of 2004 with no cough or congestion and no labored breathing. (Tr. 359). In a letter dated May 10, 2005, Dr. William Smits, a physician at Allergy and Asthma Center, reported that Brown's respiratory condition did not impair her ability to perform work related physical activities. (Tr. 323).

On July 14, 2004, Family Practice Associates LLP, ordered an MRI on Brown's injured knee. The MRI indicated that there was moderate meniscal degeneration but that there were no tears, no bursitis, and no damage to tendons and ligaments. (Tr. 193, 414). In August 2004, Family Practice Associates reported that Brown's symptoms had improved overall. (Tr. 266).

In August of 2004, Dr. Zolman, Brown's then treating physician, reported that Brown's symptoms had improved overall; she had a normal gait and was able to move from sitting to standing positions independently. (Tr. 266). In addition, Brown's overall range of motion was only mildly limited, her gait was nonantalgic, her station was normal, and she had full strength except for her left hamstring muscle. (Tr. 266).

In October of 2004, Brown returned to Family Practice Associates LLP again complaining of right knee pain, made worse from

falling out of bed. (Tr. 183). More tests revealed that Brown could ambulate and bear weight on the injured knee with minimal difficulty. (Tr. 183).

In October of 2004, Brown also visited Orthopedics Northeast regarding her right knee pain. An examination revealed that there was no joint effusion and that she was able to flex nearly 110 degrees and extend to nearly -10 degrees. (Tr. 469). The examining physician noted that Brown was able to ambulate and bear weight with only minimal difficulty and that she demonstrated fairly good ranges of right knee motion. (Tr. 465, 469).

In November of 2004, Brown visited Dr. Stephen A. Wright, who noted that there was marked crepitus and severe osteoarthritis in her right knee but that there was no laxity, no posterior drawer or sag, no significant joint spacing, and that the alignment was normal. (Tr. 265). In early 2005, Brown returned to Dr. Wright, admitting that her mood and irritability levels had improved and that her pain had improved as well. (Tr. 180, 391).

In November of 2004, Brown returned to Family Practice Associates for the treatment of her hypertension, diabetes, and blood sugar levels. Tests revealed that Brown's glucose levels were high, but that her cholesterol and other levels were nearly normal. (Tr. 184). More tests conducted in January of 2005 revealed decreased hemoglobin levels and an optimal cholesterol level. (Tr. 191).

Brown visited Parkview Health for a chest x-ray in November of 2004. (Tr. 461). X-rays revealed that the cardiomediastinal silhouette, hilar structures, and lung parenchyma were normal. (Tr. 461).

In December of 2004, Brown again visited Dr. Zolman at Fort Wayne Orthopedics. (Tr. 262). Dr. Zolman confirmed his August findings that Brown was able to move from sitting to standing independently and that her gait was nonantalgic. (Tr. 262, 266). The examination also revealed Brown suffered from some muscle tenderness, and had 4/5 strength in her right quadriceps. (Tr. 262).

In December of 2004 and January of 2005, Brown returned to Family Practice Associates for the management of her hypertension, diabetes, and blood sugar levels. (Tr. 180–181). Brown denied having shortness of breath and chest pains. (Tr. 180, 181). A subsequent examination revealed that her chest was clear and abdomen benign. (Tr. 394). Tests also revealed that Brown's hypertension and diabetes were uncontrolled. (Tr. 394). Brown mentioned that her pain, mood and irritability levels had improved. (Tr. 180, 391). The examining physician commented that simple diet and weight loss could improve Brown's condition. (Tr. 180).

In January of 2005, Brown visited Dr. Michael Arata, an orthopedic specialist and colleague of Dr. Zolman, for right knee pain. (Tr. 258). Dr. Arata diagnosed Brown with coarse patellofemoral crepitus of the right knee. (Tr. 258, 259). He also

noted that Brown's knees had no tibiofemoral joint problems. (Tr. 258).

Brown continued to visit Dr. Zolman at Fort Wayne Orthopedics for pain treatment through 2006. (Tr. 201, 256, 261). During that time, Brown's cervical and lumbar spine pain decreased by nearly 50% and her range of motion improved to within functional limits. (Tr. 256, 266). Dr. Zolman diagnosed Brown with left rotator cuff tendonitis, but by May of 2005 he noted that she had 5/5 strength in her upper extremities and that her left upper extremity pain had resolved. (Tr. 256). In April 2005, Dr. Zolman reported that injections reduced Brown's shoulder pain by 75% and that Brown was able to perform her home exercises and daily activities independently. (Tr. 255). In a May 19, 2005 visit, Dr. Zolman opined that Brown was capable of carrying up to 25 pounds, that her gait was stable and nonantalgic, that she could transition between sitting and standing, and recommended that she exercise and walk more with the aid of a knee brace. (Tr. 246-247). Dr. Zolman also found that Brown's neck and back pain improved by 50% following nerve root blocks, and that Brown's left arm pain had resolved. (Tr. 246). Brown also lost 35 pounds. (Tr. 246).

In June of 2005, Brown visited Dr. H.M. Bacchus, an independent medical examiner. (Tr. 315). Dr. Bacchus' examination revealed that Brown's neck and abdomen appeared normal and were not tender, her lungs clear, and her fine and gross dexterity preserved, except for

somewhat slow reactions in her right hand. (Tr. 316). Dr. Bacchus also noted that Brown was capable of walking on her toes, heels, and performing tandem walks, albeit with some difficulty, and that she had at least 4/5 muscle and grip strength in all her extremities (Tr. 316). Dr. Bacchus did note that Brown's back was tender and that cervical and lumbar spine pain caused a decreased range of motion (Tr. 316). Dr. Bacchus opined that Brown favored the right knee when she walked, despite the fact that Brown alleges her right knee is severely injured. (Tr. 316). Based on these observations, Dr. Bacchus found that Brown suffered from several conditions: a history of irritable bowel syndrome, degenerative disc disease, cervical and lumbar spine pain, bilateral knee arthritis, chronic knee pain, decreased range of motion, carpal tunnel syndrome, hypertension, depression, fibromyalgia, asthma, and several issues attributed to diabetes. (Tr. 317). Dr. Bacchus suggested that Brown was capable of performing light duties on a part-time basis (Tr. 317).

In June of 2005, Brown also visited Dr. Von Bargen, a psychologist. (Tr. 319). Brown's cognitive functioning was intact and she appeared to be in a good mood. (Tr. 319-320). Dr. Von Bargen opined that Brown's symptoms suggested chronic mild anxiety and depression; however, he also suggested that her depression had apparently improved and that she is able to care for herself and perform routine daily activities. (Tr. 320).

Dr. W. Shipley and Dr. Gange, state agency psychologists, reviewed Brown's medical records and assessed her mental condition. (Tr. 302–314). The examination revealed that Brown's impairments were not severe. (Tr. 302). The reviewing psychologists determined that Brown was mildly restricted in her activities of daily living and that she suffered mild difficulties in maintaining concentration, persistence, or pace. (Tr. 312). Brown's cognitive functioning was intact and her recall and proverb interpretations within normal levels. (Tr. 314).

In September of 2005, Brown began seeing Dr. Antonio Garrido as a primary physician. Dr. Garrido's examination revealed that Brown's systems were negative: her head was atraumatic, there was no inflammation in her throat, her heart and lungs were clear, her abdomen flat and nontender, and no clubbing, cyanosis, or edema in her extremities. (Tr. 198). Dr. Garrido did note that Brown was "kind of obese" and suffered from constipation since childhood. (Tr. 198).

In October of 2005, Brown returned to Dr. Garrido complaining of chronic back pain. (Tr. 200). Dr. Garrido observed that Brown was slightly obese, and diagnosed her with chronic back pain, psoriasis, and knee pain. (Tr. 200). At the request of Dr. Garrido, Brown visited Parkview Health for a lumbar spine MRI. (Tr. 219). The MRI revealed that Brown had mild to moderate narrowing of the neural foramen on the left and right sides. (Tr. 220). The MRI also

revealed posterior disc bulges and disc protrusions. (Tr. 220).
There was no evidence of spiral stenosis. (Tr. 220). In December
of 2005, Dr. Garrido diagnosed Brown with obesity and poorly
controlled NIDDM levels. (Tr. 201).

In March of 2006, Brown visited Dr. Garrido for a disability
physical. (Tr. 201). Dr. Garrido's examination only revealed that
Brown suffered from some psoriasis; however, he agreed to fill out
disability papers on account of her past history of back and knee
pain. (Tr. 201).

Brown continued to regularly visit Dr. Garrido throughout 2006.
In June, Dr. Garrido noted that Brown was doing much better on new
medication. (Tr. 202). In October, Dr. Garrido observed that
Brown's NIDDM levels were well controlled. (Tr. 202). In her second
disability report, Dr. Garrido opined that Brown's back had a free
range of motion, that her psoriasis was in remission, her neck and
abdomen were soft and nontender, and her lungs clear. (Tr. 203).

Brown continued to receive treatment from Dr. Garrido in 2007.
In February, Dr. Garrido's examination revealed that Brown was only
a little bit heavy. (Tr. 204). Dr. Garrido also found that Brown's
NIDDM levels were elevated but attributed that to recent steroid
injections. (Tr. 204). In April, Dr. Garrido noted that Brown's
constipation had improved and that her diabetes levels were under
control. (Tr. 204).

In May of 2006, Brown began receiving care from Dr. William

Hedrick. (Tr. 170). In July of 2006, Brown visited Dr. Hedrick and reported that her knees, shoulder, and hands were much better. (Tr. 541). In addition, Brown reported that the pain in her legs was gone, except for occasional outbursts, and that she "hadn't felt this good in forever." (Tr. 541).

Brown also visited Dr. Rao in May of 2006 with foot pain. (Tr. 217). An imaging report revealed that Brown suffered from a heel spur on both her right and left feet. (Tr. 217). Brown's left foot also showed signs of mild hallux valgus deformity of the left great toe. (Tr. 217). Bone mineralization and alignment were normal for both feet. (Tr. 217).

Brown visited Dr. Hedrick in September of 2006 for the treatment of low back pain, which was much improved after receiving steroid injections. (Tr. 538). Brown also indicated that medication also alleviated her pain. (Tr. 538). Despite these improvements, Dr. Hedrick indicated that Brown's conditions and symptoms were unchanged and diagnosed her with bilateral sacroilitis and right radiculopathy. (Tr. 538).

Brown returned to Dr. Hedrick in October of 2006 for the treatment of her back pain, and right hand discomfort. (Tr. 536). Brown indicated that medication had been helpful in the alleviation of her pain. (Tr. 536). Dr. Hedrick's examination revealed that Brown was positive for right loaded facets and right facet palpation, as well as numbness in her right hand. (Tr. 536). Dr.

Hedrick diagnosed Brown with low back pain, right carpal tunnel syndrome, psoriasis, and osteoarthritis. (Tr. 536).

In November of 2006, Brown returned to Dr. Hedrick's office for a follow up of her right leg and ankle discomfort. (Tr. 533). Dr. Hedrick noted that Brown experienced discomfort when she extended her leg, back, and right loaded facets. (Tr. 533). Dr. Hedrick opined that Brown suffered from low back pain, right carpal tunnel syndrome, psoriasis, and osteoarthritis. (Tr. 533).

In February of 2007, Brown returned to Dr. Hedrick with complaints of neck pain and a lower back pain that radiated down her legs. (Tr. 528). Brown indicated that steroid injections helped to manage her pain. (Tr. 528). Although Dr. Hedrick did not provide a physical examination, he diagnosed Brown with low back pain, osteoarthritis, radiculopathy, and an improved case of right sacroilitis. (Tr. 528).

In March of 2007, Brown visited Dr. Hedrick with complaints of leg and neck pain and carpal tunnel syndrome. (Tr. 525). Dr. Hedrick's examination revealed a decrease in range of motion, pain in her right arm drop down maneuver, and pain with back movement and return extension. (Tr. 525). Dr. Hedrick also noted that Brown was negative for pain with bilateral straight leg raise, negative for pain in bilateral torque tests, and negative for pain with supraspinatus maneuver on the right. (Tr. 525). Dr. Hedrick diagnosed Brown with cervical dystonia, right sacroilitis, right

carpal tunnel syndrome, and right lumbar radiculopathy. (Tr. 525).

In May of 2007, Brown visited Dr. Hedrick and reported that her neck

and back pain was significantly reduced to only minimal levels. (Tr.

520). Brown reported experiencing cervical spine discomfort and

increased headaches and pressure in her cervical thoracic junction.

(Tr. 520).

In June of 2007, Brown visited Dr. Hedrick complaining of back

pain, left shoulder pain, and right hand pain. (Tr. 168). Dr.

Hedrick examination revealed SI tenderness, straight leg raise pain,

positive facet loading tenderness, and positive de Quervain's. (Tr.

168). Based on these findings, Dr. Hedrick diagnosed Brown with

several conditions, including chronic back pain, arthritis,

tendonitis, and bilateral facet arthritis. (Tr. 168). Following the

examination, Dr. Hedrick injected Brown's right thumb, back, and

neck with pain killing medication. (Tr. 161). Dr. Hedrick noted

that Brown tolerated these injections well with no complications.

(Tr. 161). Dr. Hedrick later opined that Brown was unable to obtain

gainful employment and that her disability is of indefinite length.

(Tr. 170).


REVIEW OF THE COMMISSIONER'S DECISION

Standard of Review

This Court has authority to review the Commissioner's decision

to deny social security benefits. 42 U.S.C. § 405(g). This Court

must affirm the Commissioner's factual findings if they are supported by substantial evidence. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a decision." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). While the ALJ "must build an accurate and logical bridge from the evidence to the conclusions," he need not discuss every piece of evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). However, this Court reviews the ALJ's findings of law de novo and, if the ALJ makes an error of law, this Court may reverse without regard to the volume of evidence in support of the actual factual findings. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999). *See also Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Analysis of Social Security Act

To be considered for disability insurance benefits, a claimant must establish that she is disabled. To qualify as being disabled, the claimant must demonstrate that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A),

1382(a)(1). To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five step evaluation:

Step 1: Is the claimant performing substantial gainful activity: If yes, the claim is disallowed; if no, the inquiry proceeds to Step 2.

Step 2: Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months? If not, the claim is disallowed; if yes, the inquiry proceeds to Step 3.

Step 3: Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404, Subpt. P, App. 1? If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to Step 4.

Step 4: Is the claimant able to perform his past relevant work? If yes, the claim is denied; if no, the inquiry proceeds to Step 5, where the burden of proof shifts to the Commissioner.

Step 5: Is the claimant able to perform any other work within his residual functional capacity in the national economy: If yes, the claim is denied; if no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). *See also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Dixon*, 270 F.3d at 1176. If the claimant reaches step five, the burden shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

ALJ McGrath correctly applied the 5-step disability evaluation. At Step 2, ALJ McGrath found that Brown established a "severe impairment" within the meaning of the regulations with respect to

her psoriatic arthritis, right patellofemoral osteoarthritis, degenerative disc disease of the lumbar spine, left shoulder tendonitis, asthma, and adjustment disorder. (Tr. 14). However, with respect to Brown's carpal tunnel syndrome, hypertension, fibromyalgia, acid reflux disease, and diabetes, the ALJ determined that Brown had not established a "severe impairment" under the Act. (Tr. 15). Proceeding to Step 3, ALJ McGrath found that Brown did not suffer from an impairment or combination of impairments that qualifies as one of the listed impairments under 20 C.F.R. sections 404.1520(d), 404.1525, and 404.1526 (Tr. 15). ALJ McGrath then concluded that Brown had the residual functional capacity to perform a full range of light work, including the ability to perform her past work as a convenience store clerk (Tr. 23). Thus, Brown's claim failed at step 4 of the evaluation process. Brown believes that ALJ McGrath committed several errors requiring reversal, each of which will be addressed in turn.


A Remand for Consideration of Additional Evidence is Warranted

Brown was treated by Dr. Hedrick from May 30, 2006 and was her primary care physician at the time of the administrative hearing. At the hearing, Brown provided Dr. Hedrick's treatment notes from April 2007 through June 2007; however, Brown did not provide the treatment notes from May 30, 2006 through March 2007. Not only did Brown not submit these notes, but ALJ McGrath did not ask for them.

Brown asserts that the ALJ did not adequately develop the record—an obligation that is heightened by Brown's decision to proceed without an attorney. Brown submitted approximately 32 pages of additional medical evidence to the Appeals Council with her request for review of the ALJ's November 2007 decision. (Tr. 516–48). The additional records consisted of Dr. Hedrick's treatment notes from May 2006 to June 2007. (Tr. 516–48).

Although the claimant bears the burden of proving disability, the ALJ has a duty to fully and fairly develop the record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). *See Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). The ALJ's duty to develop the record is especially important when the claimant appears without legal counsel. *Nelms*, 553 F.3d at 1098 (citing *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). At times, this requires the ALJ to supplement the record by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information. *See Barnett v. Barnett*, 381 F.3d 664, 669 (7th Cir. 2004). *See also* 20 C.F.R. §§ 404.1512(e), 416.912(d)–(f), 416.919, 416.927(c)(3).

Typically, a reviewing court will uphold the Commissioner's decision regarding how much evidence to gather unless there is a "significant omission" that is prejudicial to the claimant. *Nelms*, 553 F.3d at 1098; (citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th

Cir. 1994). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994). Rather, a claimant must show prejudice by setting forth specific, relevant facts that the ALJ failed to consider. *Nelms*, 553 F.3d at 1098; *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir.1997).

The Government contends that the admission of these medical records falls under sentence six of 42 U.S.C. § 405(g), which permits a remand "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Thus, the government argues that this evidence should not be considered as it is neither new nor material for sixth sentence purposes. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990); *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005). Under that legal standard, the Government argues that it is clear that Brown's supplemental records fail to satisfy the requirement that the evidence be "new" as the 2006 and 2007 treatment records were clearly in existence at the time of the administrative proceedings.

This Court disagrees with the Government's contention and finds that the two years of missing physician records is a significant omission. *See Nelms*, 553 F.3d at 1098–99 (recognizing a significant omission where the claimant's appendix included examination reports

-18-

and diagnoses from several years leading up the ALJ decision). The 32 pages of information submitted by Brown after the ALJ's decision consists of various examination reports, treatment records, and diagnoses from Brown's primary care physician. (Tr. 516-48). Furthermore, the ALJ's primary reliance on the absence of these records in rejecting Dr. Hedrick's medical opinion reveals that the ALJ may have found Brown disabled had this information been included in the record. (Tr. 22).


## The ALJ Failed to State Sufficinet Grounds for Rejecting the Opinion of Dr. Hedrick, Plaintiff's Treating Physician

Social Security Ruling ("SSR") 96-2p provides that a treating physician's medical opinion must be given controlling weight if it is "well supported and not inconsistent with other substantial evidence in the case record." The ALJ must give controlling weight to a treating physician's opinion "only when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with substantial evidence in the record." *Brihn v. Astrue*, 332 Fed. Appx. 329, *3 (7th Cir. 2009) (quoting *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008)). Furthermore, SSR 96-2p requires that the ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight." SSR 96-2p. *See also* 20 C.F.R. § 404.1527(d)(2). Additionally, 20 C.F.R. sections 404.1527(d)(2) and 416.927(d)(2) establish six criteria that should be evaluated when determining the weight that should be given to a treating physician's opinion. *See McCullough v. Apfel*, 234 F.3d 1273 at *4 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1056 (7th Cir. 1999). The six criteria are:

1) the nature and extent of the treatment relationship;
2) the degree to which the medical signs and laboratory findings support the opinion;
3) the degree to which the opinion takes into account all of the pertinent evidence in the record;
4) the persuasiveness of the opinion rendered;
5) the consistency of the opinion with the record as a whole;
6) the specialization of the physician.

20 C.F.R. §§ 404.1527(d)(2), 416.927(a)-(d); *McCullough*, 234 F.3d at *4. An ALJ may discount the opinion of a treating physician if it inconsistent with the opinion of a consulting physician or is internally consistent as long as he "minimally articulate[s] his reasons for crediting or rejecting evidence of disability." *Clifford*, 227 F.3d at 871. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001).

Dr. Hedrick provided steroid injections for pain management multiple times and has seen Brown numerous times since May of 2006. (Tr. 170). The fact that Dr. Hedrick is a treating physician within the meaning of SSR 96-2p is not disputed. Hedrick noted that Brown

suffered from a number of medical impairments and that she is and has been unable to obtain gainful employment since May of 2006, the date he became her treating physician. (Tr. 170, 223). The ALJ acknowledged this; however, he afforded Dr. Hedrick's opinion less weight on the grounds that Dr. Hedrick did not include any objective medical evidence to support his position. (Tr. 22). Under certain circumstances this would not be improper; however, if an ALJ is not satisfied with available treatment records then he should contact that physician for those missing additional records. *Barnett*, 381 F.3d 664 at 669. *See also* 20 C.F.R. § 404.1512(e). If the ALJ chooses not to give a treating physician's opinion controlling weight, SSR 96-2p requires that he explain why he did not do so. ALJ McGrath's opinion fails to adequately do this.

The Government contends that Dr. Hedrick's records did not include objective findings to support an opinion of disability and that the ALJ cited to Dr. Hedrick's exhibits throughout the body of his opinion, thereby demonstrating that ALJ McGrath did consider the required factors. Although an ALJ is not required to specifically outline his findings on each stated factor, he must demonstrate that he considered them. *See McCullough*, 234 F.3d at *4. ALJ McGrath's opinion fails to adequately do this. Although the ALJ's conclusion may ultimately result in being reasonable, whatever reasons the ALJ had for discounting Dr. Hedrick's opinion are not sufficiently communicated in his opinion. Because this constitutes legal error,

this case must be remanded for further consideration.

The ALJ Properly Evaluated the Findings of Dr. Bacchus

Brown also argues that the ALJ improperly discounted the disability findings of independent medical examiner Dr. H.M. Bacchus, Jr., a non-treating source as defined in 20 C.F.R. § 404.1502. If the treating physician's opinion is not given controlling weight, the ALJ is required to explain the weight given to the opinion of a medical consultant or other program physician. 20 C.F.R. §§ 404.1527(d), (f)(2)(ii). When determining the appropriate weight to be given to a non-treating source, an ALJ is required to consider similar factors. 20 C.F.R. § 404.1527(d). *See Clifford*, 227 F.3d at 870.

It is clear that the ALJ considered the relevant factors in determining the appropriate weight to give to Dr. Bacchus' findings. ALJ McGrath noted that Dr. Bacchus issued an opinion in June of 2005. (Tr. 22). ALJ McGrath referenced several adverse medical findings, considered the length of the relationship Brown had with Dr. Bacchus and listed several clinical findings that contradicted Dr. Bacchus' opinion. (Tr. 22, 316-17). Therefore, the ALJ's rejection is supported by substantial evidence in the record.

Claimant argues that the ALJ did not mention each fact stated by Dr. Bacchus that supports a finding of disability. The law is clear however, that an ALJ need not list and explain every fact that

he considered or that exists in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An ALJ's determination will be upheld if he gives at least a minimal articulation of why a line of evidence was rejected. *Clifford*, 227 F.3d at 871. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001).

Credibility Determination

Brown also argues that the ALJ failed to properly evaluate the credibility of her testimony. ALJ McGrath noted that he relied on Brown's statements in concluding that Brown established a "severe impairment" within the meaning of the regulations. (Tr. 14–15). Despite finding that Brown's impairments could produce the symptoms, the ALJ discredited Brown's testimony surrounding the intensity, persistence, and limiting effects of those symptoms. Because the ALJ is best positioned to judge a claimant's truthfulness, this Court will overturn an ALJ's credibility determination only if it is patently wrong. *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Discrepancies between objective evidence and self-reports may suggest symptom exaggeration. *Getch*, 539 F.3d at 483. When a claimant produces medical evidence supporting the existence of impairment, the ALJ must support his credibility determination with record evidence sufficiently specific to make clear to the claimant

and to any subsequent review the weight given to the claimant's statements and the reasons for that weight. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003). Furthermore, Social Security Regulations require that an ALJ articulate "specific reasons" behind credibility evaluations. SSR 96-7p; *Steel v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). The ALJ must consider specific factors when assessing the credibility of an individual's statement including:

1. The individual's daily activities;
2. The location, duration, frequency and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effect of any medications the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p. *See also Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003). Despite these requirements, not all of the ALJ's reasons must be valid as long as enough of them are. *Halsell v. Astrue*, 2009 WL 4913322 at *5 (7th Cir. 2009). *See, e.g. Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

Brown offers valid criticism of the credibility finding but, overall, the finding is supported by substantial evidence. Brown is correct to fault the ALJ for mischaracterizing or misinterpreting

certain dates and circumstances surrounding the date she stopped working.  However, the ALJ's other adverse credibility findings were supported by the record and were consistent with the credibility determination factors expressly laid out in SSR 96-7p.  The ALJ correctly considered Brown's daily activities; Brown reported that she worked in her yard and could do housework, cook, and drive her car. (Tr. 21).  Brown specifically attacks ALJ McGrath's reference to her smoking, claiming that her failure to quit cannot be considered without evidence of a treatment recommendation by a physician.  This is not the case as smoking is a precipitating and aggravating factor, thereby permitting the ALJ to make a negative credibility finding. *See* SSR 96-7p.  The ALJ adequately articulated his reasons for discrediting Brown's testimony and provided substantial evidence to support his decision.  Under these circumstances, the court cannot find that his assessment of Brown's credibility was patently wrong.


The ALJ Adequately Addressed the Combined Impact of Brown's Health Problems

        Brown also contends that the ALJ erred by failing to consider her obesity in combination with her other impairments.  An ALJ is required to consider the effect of obesity on a claimant's limitations.  S.S.R. 02-1p.  Failure to do so is reversible error. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *Gentle v.*

*Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). The ALJ considered Brown's health conditions in the aggregate, ruling that Brown did not have "an impairment or combination of impairments" that equaled a listed impairment. (Tr. 15). *See Getch*, 539 F.3d at 483. Furthermore, ALJ McGrath sufficiently considered Brown's weight when he discussed several physicians' reports referencing Brown's weight. This implicit consideration is sufficient. *See Prochaska v. Barnhart*, 454 F.3d 736–37 (7th Cir. 2006); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Regardless, the failure to consider obesity in combination with other impairments is subject to harmless error review. *Prochaska*, 454 F.3d at 736–37. The record demonstrates that Brown lost 35 pounds in May of 2006 (Tr. 246) and, in 2007, Dr. Garrido noted that Brown was only "a little bit heavy." (Tr. 204). Accordingly, Brown's claim must fail.

## The ALJ's Mischaracterization of Relevant Evidence

Brown's remaining claims can be classified together; that ALJ McGrath ignored evidence or mischaracterized it in order to deny Brown disability benefits. *See, e.g., Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). An ALJ need only minimally articulate his reasons for rejecting evidence of a disability and is not required to provide a written statement about every piece of contradictory evidence in the record. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004); *Dixon*, 270 F.3d at 1176. The ALJ need only build an

"accurate and logical bridge from the evidence to the conclusion"
so that the reviewing court can assess the validity of the decision.
*Clifford*, 227 F.3d at 872; *Scott v. Barnhart*, 297 F.3d 589, 595 (7th
Cir. 2002).

Brown claims the ALJ insufficiently addressed the evidence
contained in Dr. Bacchus' report. ALJ McGrath referenced several
of Dr. Bacchus' treatment notes that supported Brown's claim
including her reduced range of motion, her antalgic gait, and her
decreased muscle strength. (Tr. 22). ALJ McGrath also considered
Dr. Bacchus' overall opinion regarding Brown's ability to work. (Tr.
22). This consideration is sufficient to demonstrate that ALJ
McGrath did not ignore the relevant evidence in Dr. Bacchus' report.
*See Rice*, 384 F.3d at 371; *Dixon*, 270 F.3d at 1176 (stating that an
ALJ need not address every item of contradictory evidence).

Brown also claims that the ALJ completely ignored the line of
evidence surrounding her foot pain and that failure to do so
constitutes reversible error. An ALJ is required to evaluate all
limitations that arise from medically determinable impairments, even
those that are not severe, and may not simply dismiss a line of
evidence that might be contrary to the ruling. S.S.R. 96-8p;
*Villano*, 556 F.3d at 563. The ALJ's opinion does not reference
Brown's claim of foot pain. This rejection of an entire line of
evidence is legal error and warrants remand. *See Zurawski*, 245 F.3d

at 888.  This case is remanded so that the ALJ can articulate his reasons at some minimal level.  *See Clifford*, 227 F.3d at 872.

Finally, Brown alleges that the ALJ improperly ignored evidence of Brown's pain.  Because this Court has decided to remand this case in order to incorporate Dr. Hedrick's missing pain treatment notes and to provide an adequate review of Dr. Hedrick's opinion as a primary care physician, the Court will refrain from determining whether the ALJ adequately examined those lines of evidence.

CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).


**DATED:  January 26, 2010**          /s/**RUDY LOZANO, Judge**
                                       **United States District Court**